IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| ALFRED DAYS, | : | PRISONER CIVIL RIGHTS |
| GDC No. 1273590, | : | 42 U.S.C. § 1983 |
|    Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| WARDEN SCOTT CRICKMAR, | : | |
| et al., | : | CIVIL ACTION NO. |
|    Defendants. | : | 4:15-CV-83-HLM-WEJ |

## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff, Alfred Days, a Georgia prison inmate represented by counsel, is proceeding on his individual-capacity Eighth Amendment claims against defendants, Warden Scott Crickmar, Deputy Warden Alisa Hammock, and Dr. Hill, all of whom are employed at Hays State Prison ("Hays") in Trion, Georgia. (See Order of Aug. 11, 2015 [20], at 3-5.) The case is before the Court on Dr. Hill's Motion to Dismiss [24]. For the reasons stated below, the undersigned **RECOMMENDS** that Dr. Hill's Motion to Dismiss be **GRANTED**.

## I. DISCUSSION

Dr. Hill moves to dismiss plaintiff's Eighth Amendment claim for failure to exhaust administrative remedies. (Mot. Dismiss 1.) Dr. Hill relies on the affidavit of Deputy Warden Hammock [24-2]. Hammock avers that plaintiff signed a grievance on

AO 72A
(Rev.8/82)

December 19, 2014, "contending that he was sexually assaulted . . . in the bathroom of the kitchen area at Hays . . . ." (Hammock Aff. ¶ 34.) Plaintiff's grievance "was forwarded to Internal Investigations for further [review]." (Id. ¶¶ 24, 34.) Hammock does not address (1) whether the review is complete, and if it is, (2) the results of the review.

Plaintiff signed a second grievance on January 5, 2015, "contending that . . . Dr. Hill refused his request to have a nurse examine him" on December 23, 2014. (Hammock Aff. ¶ 35.) In Georgia prisons, "[g]rievances must be filed within ten (10) calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." (Id. ¶ 11.) Plaintiff's second grievance was denied as untimely, because he signed it thirteen days after he made his request to Dr. Hill. (Id. ¶ 35.) Plaintiff could have appealed the denial of his second grievance, but he failed to do so. (Id. ¶¶ 15, 25, 35.) Plaintiff signed a third grievance on January 6, 2015, "contending that [another prison official] denied his request for medical treatment." (Id. ¶ 36.) Plaintiff's third grievance was denied, and he did not appeal. (Id.)

The United States Court of Appeals for the Eleventh Circuit has set forth the following law regarding exhaustion of administrative remedies:

2

The exhaustion of administrative remedies under the Prison Litigation Reform Act ("PLRA") is a matter in abatement that should be raised in a motion to dismiss . . . . Under such circumstances, the district court may consider facts outside of the pleadings and resolve factual disputes so long as it does not decide the merits of the case and so long as it permits the parties a sufficient opportunity to develop the record. . . . Resolving motions to dismiss for failing to exhaust administrative remedies is a two-step process. . . . First, the court must look to the factual allegations in the defendant's motion and the plaintiff's response, taking the plaintiff's version of the facts as true to the extent it conflicts with that of the defendant. . . . If the complaint is not subject to dismissal at this step, the court must then make specific findings to resolve the parties' factual disputes, and determine whether the defendant bore its burden of proving that the plaintiff failed to exhaust his administrative remedies. . . .

Under the PLRA, an inmate confined in a [prison] may not bring a § 1983 action until he exhausts the administrative remedies that are available. 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all inmate suits about prison life, . . . and the inmate who alleges harm suffered from prison conditions must file a grievance and exhaust the remedies available under a state's grievance procedures as a prerequisite to a federal § 1983 action. . . . The PLRA requires "proper exhaustion," which demands compliance with a state's deadlines and other procedural rules. . . . Thus, where an inmate's grievance fails to meet administrative deadlines or an existing exception to a timely filing requirement, his federal claim will be barred. . . .

A remedy must first be available to be exhausted, and availability requires that the remedy is 'capable of use for the accomplishment of [its] purpose.' . . . [A] prison official's conduct, under certain circumstances, might prevent an inmate from pursuing his administrative remedies, thereby rendering them 'unavailable' and lifting the exhaustion requirement. . . . [A] prison official's serious threats of substantial retaliation against an inmate for pursuing a grievance in good faith render

3

> the inmate's administrative remedy unavailable. . . . [O]ther courts of appeals have concluded that administrative remedies are unavailable where prison officials do not respond to an inmate's grievances or prevent the filing of grievances.

Tilus v. Kelly, 510 F. App'x 864, 865-66 (11th Cir. 2013) (per curiam) (citations omitted). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (per curiam).

In the present case, Dr. Hill shows that plaintiff filed an untimely second grievance and failed to appeal its denial. (Hammock Aff. ¶¶ 15, 25, 35.) In response, plaintiff argues that his first grievance regarding the alleged sexual assault also covered his claim against Dr. Hill. (Pl. Br. [30] 6-7, 12-13.) Plaintiff's argument fails because his first grievance did not mention Dr. Hill. (See Def. Attach. 3 [24-5].)

Plaintiff next argues that he was not required to appeal the second grievance because a finding of untimeliness is not appealable. (Pl. Br. 9.) However, the relevant portion of the Standard Operating Procedures ("SOP") of the Georgia Department of Corrections provides that "[t]he offender has 7 calendar days from the date he/she receives the response to the Original Grievance (including a rejection as untimely) to file a Central Office Appeal." (Def. Attach. 1 [24-3], at 12.) Therefore, an untimely

grievance is appealable, and plaintiff was required to file an appeal in order to exhaust his administrative remedies as to his second grievance.

Plaintiff's last argument is that Dr. Hill refused to give him a grievance form while he was "kept in the infirmary for thirteen days," presumably from December 19, 2014, until January 2, 2015. (Pl. Br. 5-6; see also Def. Attach. 4 [24-6], at 2.) However, the following relevant portion of the SOP does not explicitly require Dr. Hill to provide a grievance form: "Grievance Forms must be available in the control rooms of all living units and must be provided upon request by an offender. For offenders in isolation and segregation areas, staff assigned to those areas must provide these Forms upon request by an offender." (Def. Attach. 1 [24-3], at 5.) That provision does not mention the infirmary, and there are no definitions of the terms "living units" and "isolation and segregation areas." Plaintiff assumes that the "living units" and "isolation and segregation areas" must include the infirmary; (see Pl. Br. 8-9); but nothing in the SOP supports his assumption.

In addition to the absence of an explicit requirement in the SOP for infirmary staff to provide a grievance form, the undersigned notes that plaintiff was able to sign his first grievance on December 19, 2014, apparently while he was housed in the infirmary. (See Def. Attach. 3 [24-5], at 5.) Plaintiff fails to show that Dr. Hill was the

5

only possible source of a grievance form while plaintiff was housed in the infirmary. When plaintiff signed his second grievance on January 5, 2015, he acknowledged that it was late, but he did not attribute the delay to Dr. Hill. (See Def. Attach. 4 [24-6], at 5.) Instead, plaintiff stated that he "was told that only one grievance [per] week can be sent out." (Id.) Even assuming that Dr. Hill gave plaintiff that information, he could have timely signed his second grievance as early as December 26, 2014, which was seven days after he signed his first grievance on December 19, 2014.

If plaintiff intended to sign his second grievance while he was housed in the infirmary but was prevented from doing so by Dr. Hill, plaintiff fails to explain why he waited three additional days after his release from the infirmary on January 2, 2015, before signing his second grievance on January 5, 2015. Plaintiff suggests that he was transferred to another prison at that time, but the record shows that he was not transferred until January 22, 2015. (Pl. Br. 5-6; Def. Attach. 4 [24-6], at 6.) In contrast, plaintiff did not wait to sign his first grievance, as he submitted it on the same day that he was allegedly sexually assaulted, on December 19, 2014. The undersigned concludes that the record presented by the parties does not support plaintiff's claim that the untimeliness of his second grievance was attributable to Dr. Hill.

Accordingly, plaintiff's Eighth Amendment claim against Dr. Hill is subject to dismissal for failure to exhaust administrative remedies.  See Tilus, 510 F. App'x at 865.

## II. CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Dr. Hill's Motion to Dismiss [24] be **GRANTED**.[1]

**SO RECOMMENDED**, this 30th day of June, 2016.

_Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

---

[1] The parties were previously informed that dispositive motions are due thirty (30) days after the District Court rules on Dr. Hill's Motion to Dismiss.  (See Order of May 19, 2016 [36].)